McCunn, J.
(dissenting). I must dissent in this case. On the hearing before us in General Term, with the slight attention which can be given to cases there, I was favorably inclined to the theory propounded by counsel for the respondent, but on a more careful perusal of all the cases, both English and American, I have decidedly changed my views, and I am now quite positive the moneys should be looked upon as the moneys of the defendant, and should have been, by order of the court below, applied to the satisfaction of the judgment.
Let us see what the application is for.
On the third of January, 1870, the parties applied before the deputy sheriff (defendant having been arrested) to put in special bail. The bail offered was not satisfactory, and Alexander, one of the bondsmen, said: “ I will deposit the amount of the bail ($1,500) with you, Mr. Deputy Sheriff, until we justify, or until proper bail justify.” This was done. Mr. Bancker, the deputy who took the money, says he took it to secure himself, and not as a deposit in the action under the Code. This he could not do, for two reasons. 1. He was not acting for himself; he had no interest in the matter; he was acting as sheriff, as officer of the law, and that for the security of the plaintiff, under and *644 by virtue of a solemn statute passed for that purpose, and he could not and was not acting for himself, he not being interested. 2. He was acting for the accommodation of the defendant, to keep him from jail, and in order that the requirements of the Code in such cases should be complied with.
The fact that Mr. Bancker says he was acting for his own security does not legally make it so. He cannot qualify his acts. He either took the money in the action or he did not. How let us see whether he took the money in the action or not. The suit was not commenced for his (Mr. Bancker’s) benefit. It was commenced for plaintiff’s benefit. The order of arrest was not for Mr. Bancker’s benefit; it was for the plaintiff’s benefit; and all he (Deputy Sheriff Bancker) had to do, after process was placed in his hands, was to exercise proper diligence and get the person of defendant in custody. He did so, and when he laid his hands upon the defendant’s shoulder Deputy Sheriff Bancker was safe, quite safe, because he could have no better or higher security than the person of defendant—so that anything done after the arrest was made, was done to accommodate defendant and for the plaintiff’s benefit. When the defendant was arrested the Code required one of three things to be done (the statute, as' I will show hereafter, prohibiting any other, course): the deputy had either to lock defendant up, or take special bail, or take a deposit for the amount front defendant or some one acting for him. The special bail was given and accepted by Mr. Bancker, as he says. He also says that he asked the attorney for plaintiff to approve it; the attorney declined, and then Mr. Bancker says he exacted the money “ solely as vndemnity to himself so that the hail might justify.” .... “ The money was to protest myself against cmy liability to which I might he made hy reason of their failing to appear to justify.” The defendant’s attorney’s deposition is quite different to this. Be that as it may, however, the statement of Mr. Bancker is quite sufficient in itself to enable me to show that the fund deposited with him was liable under the Code, if the bail did not justify before judgment. What does the depositor say himself % *645 Why, he says, here is $1,500; keep it until I justify. If he do not justify, what then ? Can he coolly take that money back ? Why, no; that would be trifling with justice. Well, what next? Why, the law declares he forfeits it; indeed, the depositor lost all interest in the money the moment it touched Hr. Bancker’s hands; it then became defendant’s, because the law does not say that a third party can make a deposit for defendant. It says that defendant can only make it, and third parties are not recognized and cannot be recognized in the action.
Supposing Hr. Bancker had taken this $1,500, or any other amount whatever, corruptly, as against his principal, the high sheriff, and as against the plaintiff—which of course he did not do in this case—but supposing he had done so, would the law tolerate such a course for one moment ? Certainly not; and yet if we countenance this kind of procedure we are opening a wide door for the grossest kind of frauds—frauds which can be perpetrated by deputies, not only on the plaintiffs inactions, but on the high sheriff also.
Again, supposing Hr. Bancker had had confidence in defendant, and without the bond had said to him, “ You indemnify me privately with $1,500; I will take the risk; I will say nothing about it; then I will let you go, and when you perfect special bail I will give you the money back,” and defendant under these circumstances had failed to perfect bail, and left the jurisdiction of the court; could Hr. Bancker have kept the money, or could he have given it back to the depositor ? Certainly not. Why, it is a misdemeanor for a deputy to do this. And this is exactly what he claims to have done. Because, when Hr. Bancker hesitated about the names of the sureties, and after the attorney declared them bad, or at least declined to accept them, that instant the bond, so far as plaintiff was concerned, was utterly worthless. Until the sureties had justified (and the sureties named in the special bail-piece could not justify after judgment—and have not justified to this day), we must bear in mind that until they do justify, and that before judgment, the plaintiff is not bound to receive them as sureties.
*646 If such a theory was tolerated for one moment any deputy could in any cause, by such a juggle, seriously impair the rights of the parties litigant. Now Hr. Bancker says he took the funds to save himself. Surely, it does not belong to deputy sheriffs or high sheriffs to make law by their sayings, nor can a principle of law be in any way affected by any of their utterances. What they do as officers of the law can only be told by them after being done, and then from what they have done the law can be fitly applied. It would be well for ministerial officers to "leam that in controversies where they are called upon to act officially, they cannot act for themselves and for their own security and safety, but must act for the benefit of the parties in the controversy. It is not from what the sheriff or any of the parties said at the time a deposit such as this was made that conclusions can be drawn; it is from what they did that the law can be inferred, and from that the legal effect must follow, so that we have without any dispute or contradiction the failure to put in satisfactory bail and the consequent deposit of the money in-lieu thereof. Now, this being the case, what is the legal effect ? It is expressly declared by law that “ no sheriff or other officer shall- take any bond, obligation, or security, taken otherwise than as herein directed.” In this case fifteen hundred dollars was taken by the sheriff, a security recognized by the Code as one which the sheriff might take, and surely we must not permit the deputy sheriff to allege that it was taken otherwise than as the law directs, and claim that what he had a right to do legally was not intended to be done legally, but was intended to be done by him illegally. If, as I have said before? we permit a deputy sheriff or a sheriff to say that moneys received as these moneys were received was not a real deposit as ■ provided by law, then there is no imaginable case in which a similar course to this may not be pursued by the sheriff or his deputies on arrests, and plaintiffs thus be entirely deprived of the benefits arising under section 200 of the Code.
It is urged that the moneys were not the funds of the defendant. On the contrary, we must hold they were his funds for all *647 intents and purposes (Herman v. Aaronsen, 9th Abb. P. R., N. S., 155). They were placed for his benefit in the sheriff’s hands. It was because he, defendant, was arrested, they were placed there. They were placed there under and by virtue of the proceedings in this case, because if the action had not been commenced, and if the defendant had not been arrested in the action, the sheriff would not have possession of the money now. After the sheriff gets the funds, the instant they touch his hands, and without a word from him, the Code steps in and says how they shall be applied; whether they shall be returned after special bail is perfected, or whether they shall be applied to the payment of the judgment, and the fact that the deposit was made by a third party is the same as if it were made by the defendant (Herman v. Aaronsen, supra).
The sum was deposited for the defendant, and for his benefit, and on the strength of such deposit he was set at liberty, and not on the strength of the bond. If the bond was good, why exact the money % Indeed, if the theory of Mr. Bancker, the deputy, be correct, that he took a good bond and the money also, see what oppression it might lead to as against defendants. The exacting of double security cannot be done; it was not done in this case, and the clear rule of law will not permit it. But even if the bond was given, and it was a perfectly good bond, and was accepted as such by Mr. Bancker, and that he released defendant on its strength, yet the money was also given, and received by Mr. Bancker, and certainly plaintiff, out of the two securities, has the undoubted right to select the best; you cannot ask him to pursue a bond, perhaps the shadow of security, when there are funds of defendant in the hands of the court, placed there to the credit of the action, and for the very purpose of satisfying the claim. In all cases the rule is, that you are bound to exhaust process against the property of defendant before you can proceed against his person, and it would be absurd to resort to either with moneys of the debtor in the sheriff’s hands, and under the control of the court, which can be applied in satisfying the debt. The truth of the matter is this—the bond *648 was declined to be taken by Mr. Bancker as sufficient, but it was retained by Mm and the money demanded and received as special deposit, and as Mr. Bancker says, for his own security; but even under these circumstances the moment the judgment was entered, if special bail was not perfected, such moneys became subject to the satisfaction of the bill.
Will any one tell me that if this defendant had disappeared or run away from the State, after giving this money and bond, the court would not have promptly ordered this judgment to be satisfied out of the fund? Certainly not. You cannot play fast and loose with clear principles of law.
About the 29th December, 1869, the order of arrest was granted, and on the 3d January, 1870, defendant was arrested and money deposited. Within a few days after efforts were made to have special bail justify, under section 199 of the Code. It was adjourned from time to time, and before the justification was completed judgment was entered. Plaintiff then (after judgment) refused to go on with the justification, because, as he alleged, under section 199, the justification must be completed before judgment, and applied to the court to have the moneys so deposited appropriated to satisfy the judgment. On the refusal to proceed with the justification on the part of the plaintiff, defendant surrendered himself in exoneration and afterward put in bail on the limits. This last act of defendant—his surrender and bail to the limits—does not in any way change matters. Plaintiff’s rights had attached to the moneys in the hands of the sheriff on the entry of judgment, and any act of any other party but his (plaintiff’s) own cannot affect the question. Hay, more, I think the court has no power, even on an application, in the absence of this motion, to order the money to be refunded to Alexander, the bondsman. Ho such power is conferred on this court. On the contrary, by the very letter and spirit of the Code, the failure to put in and perfect special bail or to surrender before judgment makes the fund subject to be immediately applied to the payment of the judgment. By section 198 the sheriff must, within four days after receipt, pay the sum into *649 court. Section 199 provides that after the money is so deposited bail maybe given and justified upon notice, as prescribed by section 193, any time before judgment, and thereupon before judgment the judge shall direct the money deposited to be refunded to the defendant—not to the depositor. Indeed, the depositor cannot be recognized at all. The statute, in express terms, allows only the defendant to -make the deposit, and treats him throughout as its owner.
Our books furnish but two cases where these questions have been discussed: Herman v. Aaronsen (3 Abb., N. S., 389), in which the application is made by the depositor prior to the justification of bail and of course denied; and the case of Salter v. Werner (6 Abbott Pr. R., 191), both of which sustain me as far as they go in my views here. These cases, however, do not furnish absolute precedents for this case, as the application was premature in the former ease, the defendant having put in special bail before judgment, and in the latter case the bail duly justified and there ended the matter. The English books, however, contain many cases covering the grounds we are now discussing, and the construction placed upon the English statutes of 43 George the Third, c. 46, and to the subsequent statute of George the Fourth, c. 71, all tend to establish the rule that if money be deposited by a third person as bail for the defendant, and special bail be perfected or the defendant surrendered, an application by him for the money so deposited before judgment would be granted if the defendant assented (Nunn v. Powell, 1 Smith R., 13; Edelstein v. Adams, 2 Moore, 610; S. C., Taunton, 557; Bull v. Turner, 1 Tyrwhitt & Granger, 367; Douglas v. Stoubrough, 3 Adolph & Ellis, 316; 1 Tidds Pr., 9th ed., 288).
By the English courts a surrender before judgment was regarded as equivalent to putting in special bail, inasmuch as the object was to secure the appearance of the defendant, although neither the statute of 43 Geo. III., nor 7 and 8 Geo. IV., c. 71, provided that it could be so regarded in reference to money deposited under its provisions. The act of George the Third and *650 the provisions of the Code in regard to this subject are nearly similar. They both provide for the deposit of money instead of bail, and for the payment of the money into court, and that if bail shall be duly perfected before judgment the money deposited shall be refunded to the defendant. They differ as to the mode in which the money is to be paid. By the Code the act by which the fund may be restored to the defendant is to be performed before judgment. By section 199 the special bail must be given before bail, and by section 200, if the money remain on deposit at the time of the judgment, the clerk shall, under the direction of the court, apply it to the satisfaction thereof.
The statute of George III. provides, that if bail be not perfected the money deposited shall, by order of the court, be paid directly to the- plaintiff; and the act of 7 and 8 George IT. provides that the defendant making the deposit may at any time during the progress of the cause receive the same by order of the court upon putting in and perfecting bail. This section and section 199 of the Code are to the same effect, both providing for the restoration of the money if bail be put in before judgment. Section 200 of the Code declares that if the money remain on deposit at the time of an order or judgment for the payment of the money, the clerk shall, under the direction of the court, apply the same, thus confirming the intention that the money must be withdrawn before judgment. In the case of Bull v. Turner, above cited, application for the money deposited was made after the judgment by the plaintiff, and although the defendant had surrendered himself, yet the court granted it—Baron Park saying, “ it is perfectly clear that the party has paid this sum into court instead of the defendant, and if so can only have it back upon the same terms as he could have done,” thereby holding in fact that after judgment the fund could not be given to the depositor.
By the express provisions of the Code (section 200) the money can only be refunded to the defendant where the special bail is put in before judgment, although, by a liberal construction, it may be paid out to the person who makes the deposit within the *651 same limit. But when the judgment is perfected, then the money can only be treated as the defendant’s; the construction favoring the depositor ceases, and he must lose his funds for two reasons:
First. The presumption is that the money belongs to the defendant.
Secondly. After judgment there is no power to restore it to him.
If the bondsman Alexander wished to have his money refunded to him, he should have seen to it that special bail was put in or the defendant surrendered before judgment was entered. If neither act be done the money can only be regarded as in the custody of the lawj and that for the benefit of the plaintiff.
It is lastly said by the respondent’s counsel that, because the sheriff or deputy sheriff did not pay the money into court and give the necessary certificate, these funds remain the funds of the depositor Alexander. This cannot be, for two reasons: 1st. The sheriff cannot take advantage of his own neglect or wrong in not paying the money into court. This is familiar learning. 2d. The depositor and his principal did not apply in time—before judgment—to have these funds returned. Again, it is conceded that after the money was paid to the deputy sheriff he set the defendant at liberty; and it is also conceded that the special bail did not justify before final judgment. Now the effect of all this must be one of two things— either the money was deposited by the defendant under the Code, or else there was an escape, for which the sheriff can be sued, for the bond cannot be sued, for it never was perfected ; and as it is the duty of the courts to protect public officers as far as in their power lies, we would be derelict in our duty, when we have it in our power, not to protect the. high sheriff by ordering the moneys now in the hands of his deputy to be applied to the payment of this judgment.
The order of the court below should be reversed, and an order entered satisfying the judgment out of the moneys now in the hands of the deputy, Hr. Bancker.